# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| SAMUEL ST. JOHN, <br><br> Plaintiff, <br><br> v. <br><br> JANET NAPOLITANO, Secretary, <br> Department of Homeland Security, <br><br> Defendant. |

Civil Action No. 10-00216 (BAH)

## **MEMORANDUM OPINION**

The defendant in this employment discrimination action has moved to compel discovery of the plaintiff's medical records, including any records of mental health treatment. This motion presents the Court with a question which frequently arises in employment discrimination cases but which has led to divergent outcomes in the courts: Does a plaintiff automatically waive the psychotherapist-patient privilege merely by asserting that the defendant's actions caused the plaintiff to experience emotional distress? For the reasons that follow, the Court concludes that the answer is no. The Court also concludes that some relevant, non-privileged medical records must be produced. Accordingly, the Court grants in part and denies in part the motion to compel.

### I. BACKGROUND

Plaintiff Samuel St. John filed this employment discrimination action in February 2010 against the Department of Homeland Security. He worked for over thirty years as a federal employee before his retirement, at a civil service grade level of GS-14, on March 31, 2010. Amended and Supplement Complaint ("Am. Compl.") ¶¶ 2, 13. He alleges that the defendant twice denied him promotions, in August 2008 and January 2009, for a director/program manager

position at a level GS-15 within the Container Security Initiative ("CSI") Division of the Office of Field Operations, Customs and Border Protection, due to his national origin and age, and in retaliation for protected activity, in violation Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 633a, *et seq*. Am. Compl. ¶¶ 1, 10, 22, 28. Among the injuries that the plaintiff claims to have suffered due to the defendant's alleged discrimination and retaliation are "irreparable loss and injury, including, but not limited to, humiliation, embarrassment, emotional distress, economic loss, and deprivation of his right to equal employment opportunity," and he seeks compensatory damages for these injuries in his prayer for relief. *Id*. ¶ 44, "Prayer for Relief," ¶ (C).

Discovery has been underway in this case and reached an impasse over the defendant's demand that the plaintiff produce medical records for the period of January 1, 2002 to the present. Specifically, the defendant has requested:

- the production of documents that "support or relate to your calculation and allegation of damages as alleged in the Complaint and/or as set forth in Plaintiff's Initial Disclosures." Def.'s Request No. 9;

- "any and all documents relating to or evidencing the monetary or other benefits, and other items or damage or further relief you are seeking in this lawsuit, including but not limited to, (a) medical, psychiatric, psychological or counseling reports of any kind . . . (b) bills, invoices and/or other documents reflecting the date of, nature of and/or amount paid for counseling, medical, psychiatric, and/or psychological treatment or diagnosis; and/or (c) notes, correspondence or other documents that reflect your need for, attempt to obtain, nature of and/or amount

2

paid for counseling, medical, psychiatric, and/or psychological treatment or diagnosis." Def.'s Request No. 12;

- "all documents of any health care provider for the period from January 1, 2002 to the present regarding any medical, psychological, or emotional problem or condition experienced by you that relate to the allegations in the Complaint or the alleged injuries for which you seek compensation in this lawsuit." Def.'s Request No. 13.

In addition to these document requests, the defendant posed interrogatories requiring that plaintiff "state whether you are at the present time, or have at any time since January 1, 2002, sought consultation or treatment by a psychiatrist, psychologist or other mental health care professional and, if so, identify the name and address of any such health care provider and the dates of consultation or treatment." Def.'s Interrog. No. 5; *see also* Def.'s Interrog. No. 6.

The plaintiff has responded to these requests, *inter alia*, by raising various objections and stating that "he has not consulted or obtained treatment from any health care provider for any injury resulting from Defendant's illegal conduct and has not sought or received medical treatment for the conditions listed in response to interrogatory No. 4 [i.e., injuries related to emotional distress] for a two-year period before his application and non-selection for the CSI Director/Program Manager to the present." Pl.'s Suppl. Resp. to Def.'s Interrog. No. 5. The plaintiff has also refused to provide a HIPAA release form that would enable the defendant to obtain records from any healthcare provider directly.

During a teleconference on February 23, 2011, to resolve this and other discovery disputes, the Court directed the parties to submit their positions and legal authorities in writing

for the Court's consideration in determining the defendant's motion to compel production of the plaintiff's medical records for a nine-year period.[1]

## II. DISCUSSION

### A. Relevance

"[W]hen confronted with a discovery demand to which an objection has been made, [the Court must first] ascertain whether there is a reasonable likelihood or possibility that the information sought may be relevant to a claim or defense or likely to lead to such evidence." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, No. 07-489, 2009 WL 3443563, at *3 (D.D.C. Oct. 23, 2009). Thus, the first question the Court must answer is whether the plaintiff's medical records are relevant to any claims or defenses in this action, and, if so, whether any protective order under Fed. R. Civ. P. 26(c) ought to limit their production.

Pursuant to Rule 26, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance is construed broadly for the purposes of discovery. *Food Lion, Inc. v. United Food and Commercial Workers International Union,* 103 F.3d 1007, 1012 (D.C. Cir. 1997). On the other hand, the relevance standard is "not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Id.* (internal quotation marks and citation omitted).

Here, the plaintiff argues that his medical records are irrelevant because he has stated that he has not sought treatment from any health care provider for any injury resulting from the defendant's conduct and has indicated that he will not offer any expert testimony or medical records as evidence. *See* Pl.'s Letter to the Court dated March 2, 2011 ("Pl.'s Letter") at 3. The

---

[1] In a Minute Order, dated February 28, 2011, the Court granted the parties' joint motion to, *inter alia*, file their submissions under seal by March 2, 2011 at a length of five pages.

4

defendant argues that the medical records are relevant because the records may reveal some alternative explanation for the emotional distress the plaintiff allegedly suffered, providing the defendant with a potential defense. *See* Def.'s Letter to the Court dated March 2, 2011 ("Def.'s Letter") at 1.

Mindful that relevance is construed broadly for the purposes of discovery, the Court finds that at least some of the plaintiff's medical history is relevant here. Other courts in this district have also found that a Title VII plaintiff's medical records are relevant under similar circumstances. *See Barnett v. PA Consulting Group, Inc.*, No. 04-1245, 2007 WL 845886, at *4 (D.D.C. Mar. 19, 2007) ("[A] defendant is entitled to explore whether causes unrelated to the alleged wrong contributed to plaintiff's claimed emotional distress, and a defendant may propound discovery of any relevant medical records of plaintiff in an effort to do so.") (internal quotation marks and citation omitted). There is no basis for finding that medical evidence from the entire nine-year period from 2002 through the present is relevant, however.[2]

Yet even assuming *arguendo* that evidence from the entire requested time period were potentially relevant, the Court has "broad discretion to tailor discovery narrowly" under Rule 26, and "[i]t is appropriate for the court, in exercising its discretion. . ., to undertake some substantive balancing of interests." *In re Sealed Case (Medical Records),* 381 F.3d 1205, 1215 (D.C. Cir. 2004) (quotations omitted). Rule 26(c) provides that a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Such an order may forbid disclosure altogether, or, among other measures, "limit[ ] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P.

---

[2] The defendant has not identified why its requests seek records dating back to 2002 in particular. The plaintiff does not appear even to have begun working for the CBP's Container Security Initiative Division in Washington, D.C. until 2004. *See* Am. Compl. ¶ 4.

26(c)(1)(A) and (D). "[A]lthough Rule 26(c) contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule." *Medical Records,* 381 F.3d at 1215 (quotation omitted). Accordingly, the "court, in its discretion, is authorized by [Rule 26(c)] to fashion a set of limitations that allows as much relevant material to be discovered as possible, while preventing unnecessary intrusions into the legitimate interests – including privacy and other confidentiality interests – that might be harmed by the release of the material sought." *Id.* at 1216 (quotation omitted).

In balancing the competing interests at stake here, the Court finds that disclosure of some records in the plaintiff's medical history is warranted, but not the wholesale disclosure of medical records for the nine-year period, from 2002 through the present, that the defendant seeks. *See E.E.O.C. v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114, 123 (W.D.N.Y. 2009) (defendant's "contention that any physical malady might cause emotional distress . . . scarcely gives defendants a license to rummage through all aspects of the plaintiff's life in search of a possible source of stress or distress.") (quoting *Evanko v. Elec. Sys. Assocs., Inc.*, No. 98 Civ. 2851, 1993 WL 14458, at *2 (S.D.N.Y. Jan. 8, 1993)). The defendant asserts such a lengthy time period is necessary because latent medical conditions "can manifest themselves in different ways over a period of time." Def.'s Letter at 4. The Court finds that this is a weak basis for seeking records over such a broad time period, and that the plaintiff's medical records from many years prior to the events alleged in the complaint are highly unlikely to contain much relevant evidence. On the other hand, medical records are likely to contain sensitive personal information, a fact underscored by the existence of statutory confidentiality provisions, like those of the HIPAA Privacy Rule. *See* Pl.'s Letter at 5. Accordingly, the plaintiff has demonstrated that the burden of producing such records and the harm to the plaintiff's privacy interests from

the disclosure significantly outweighs any marginal relevance for the majority of the time period for which the defendant seeks records. The Court finds that the relevant time period for the production of the plaintiff's medical records in response to the defendant's requests should only extend from two years prior to the first date of the alleged discrimination through the present (the "Relevant Time Period").[3] In addition, the defendant is not entitled to production of all of the plaintiff's medical records, but only records that have a logical connection to the plaintiff's claims of injury. *See Nichols Gas & Oil, Inc.*, 256 F.R.D. at 123. Such records include any non-privileged mental or emotional health records, records involving new medical issues for which the plaintiff first sought treatment during the Relevant Time Period, and records involving a medical condition that the defendant has established, through other discovery, may have caused the plaintiff emotional distress.[4]

### B. Psychotherapist-Patient Privilege

The plaintiff asserts that any confidential communications with mental health professionals are privileged. The defendant counters that the plaintiff has broadly waived the psychotherapist-patient privilege by asserting a claim for damages arising from emotional

---

[3] In response to an interrogatory regarding the plaintiff's claims for damages, the plaintiff states that "Plaintiff has been, and continues to be, injured as a result of mental and emotional distress . . . caused by Defendant's illegal actions in an amount to be determined by a jury." Pl.'s Resp. to Interrog. No. 4. Given the plaintiff's continuing claims for emotional distress through the present, the Court finds that the records should be discoverable through the present.

[4] The plaintiff relies chiefly on two district court cases in arguing that the medical record evidence should be shielded from discovery entirely. In *Broderick v. Shad*, 117 F.R.D. 306 (D.D.C. 1987), the Court denied a defendant's motion to compel production of medical records in apparent reliance in part on "physician-patient privilege." *See id.* at 309 (citing an earlier district court case which, in turn, analyzed a physician-patient privilege rooted in D.C. Code § 14-307 (1981)). While no general physician-patient privilege applies here because this case is a Title VII action in federal court, *see Morris v. City of Colorado Springs,* No. 09-cv-01506, 2009 WL 4927618, at *1 (D. Colo. Dec. 18, 2009), the D.C. Circuit has instructed that the existence of applicable state law privileges and other statutory confidentiality provisions are appropriate factors for the district court to weigh in determining the scope of permissible discovery under Rule 26. *Medical Records,* 381 F.3d at 1215-16. Accordingly, the Court has taken those factors into account in reaching its decision here. In *Sanders v. District of Columbia*, No. 97-2938, 2002 WL 648965 (D.D.C. Apr. 15, 2002), the other case relied upon by the plaintiff, the Court upheld a magistrate judge's ruling granting a protective order under Rule 26(c) that precluded discovery into the plaintiff's medical records. *Id.* at *4-5. It is within a Court's discretion to preclude discovery of medical records entirely, but such an outcome is not warranted here based on the Court's balancing of the parties' competing interests.

distress. According to the defendant, the plaintiff has put his mental health in issue, thus waiving any privilege. For the reasons explained below, the Court concludes that the plaintiff has not waived the psychotherapist-patient privilege.

In 1996, the Supreme Court held that "confidential communications between a licensed psychotherapist and [his or her] patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). In recognizing the psychotherapist-patient privilege, "[t]he Court squarely rejected the position that a court should balance the need for relevant information in the particular case before it against the invasion of a patient's privacy." *Koch v. Cox*, 489 F.3d 384, 388-89 (D.C. Cir. 2007) (citing *Jaffee*, 518 U.S. at 17 ("Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege.")).[5]

"The *Jaffee* Court also observed that a patient may of course waive the protection of the privilege, but it did not speak further to the subject of waiver." *Id*. at 389 (internal citation and quotation omitted). "The Court did provide some guidance relevant to waiver, however, when it likened the privilege to the attorney-client and spousal privileges." *Id.*

The question of waiver of the psychotherapist-patient privilege arises frequently in civil actions where a plaintiff alleges emotional distress. In the years since *Jaffee*, federal courts faced with this situation have developed divergent approaches for determining whether privilege has

---

[5] The *Jaffee* court held that the "psychotherapist privilege covers confidential communications made to licensed psychiatrists and psychologists" and "should also extend to confidential communications made to licensed social workers in the course of psychotherapy." 518 U.S. at 15-16. *Jaffee* left open the question of whether the privilege extends to mental health counselors other than licensed psychiatrists, psychologists, and social workers, and indicated that future courts would need to "delineate [the] full contours" of the privilege. *Id.* at 18; *see also Oleszko v. State Comp. Ins. Fund*, 243 F.3d 1154, 1155-58 (9th Cir. 2001) (extending privilege to unlicensed but trained workplace counselors).

8

been waived. Courts applying the so-called "narrow" approach have held that "patients only waive the privilege by affirmatively placing the substance of the advice or communication directly in issue." *Koch*, 489 F.3d at 390; *see also Fitzgerald v. Cassil*, 216 F.R.D. 632, 638 (N.D. Cal. 2003). Under the "broad" approach, courts have held that a plaintiff places his or her medical condition at issue and waives the psychotherapist-patient privilege simply by making a claim for emotional distress. *See Koch*, 489 F.3d at 390; *see also Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000). A third approach – the "middle ground" approach – draws a distinction between claims for "garden variety" emotional distress and more severe emotional distress allegations. Under this approach, "[w]here a plaintiff merely alleges 'garden variety' emotional distress and neither alleges a separate tort for the distress, any specific psychiatric injury or disorder, or unusually severe distress, that plaintiff has not placed his/her mental condition at issue to justify a waiver of the psychotherapist-patient privilege." *Koch*, 489 F.3d at 390 (quoting *Jackson v. Chubb Corp*., 193 F.R.D. 216, 225 n.8 (D.N.J. 2000)).

In *Koch v. Cox*, the D.C. Circuit discussed these different approaches. 489 F.3d at 390. While the facts in *Koch* did not require the Court to adopt a particular approach, the Court's dicta nonetheless provided important points of guidance. First, the *Koch* court implicitly critiqued the "broad" approach to waiver. Analogizing the psychotherapist-patient privilege to the attorney-client privilege, as suggested by the Supreme Court in *Jaffee*, the *Koch* court noted that "[a] client waives that privilege when he puts the attorney-client relationship in issue-for example, by suing the attorney for malpractice or by claiming he relied upon the attorney's advice. . . . By analogy, a patient would waive the psychotherapist-patient privilege when he sues the therapist for malpractice, or relies upon the therapist's diagnoses or treatment in making or defending a case." *Id.* at 389. In other words, under the analogy to attorney-client privilege, merely alleging

9

the experience of emotional distress would not constitute waiver. Second, the Court voiced concern about the risk of adopting an overly broad standard that would "*sub silentio*" overrule *Jaffee* and instructed that "we must supply a standard for determining whether a patient has waived the privilege . . . that does not eviscerate the privilege." *Id.* at 390. Since the plaintiff in *Koch* was not actually asserting any claim for emotional distress, the Court in that case did not ultimately reach the question of when asserting such a claim may constitute waiver of the privilege. The *Koch* court held that a plaintiff who is not asserting emotional distress implicitly waives the psychotherapist-patient privilege when "he does the sort of thing that would waive the attorney-client privilege, such as basing his claim upon the psychotherapist's communications with him, or, as with the marital privilege, selectively disclosing part of a privileged communication in order to gain an advantage in litigation." *Id.* at 391 (internal citation, quotation, and alteration omitted).

In *Sims v. Blot*, 534 F.3d 117 (2d Cir. 2008), the Second Circuit did face the "question of whether a plaintiff's claim for injuries that include only the garden-variety emotional injury that would ordinarily result from" the defendant's alleged misconduct constituted a waiver of privilege. *Id.* at 129. The Second Circuit held that a plaintiff's assertion of claims for "garden variety" emotional distress or "unspecified damages" that may include some sort of mental injury does not automatically waive the privilege. *Id.* at 141-42. The *Sims* court strongly endorsed the D.C. Circuit's reasoning in *Koch*, *id.* at 133-34, and its reliance on applying meaningful analogies between the psychotherapist-patient privilege and other testimonial privileges in assessing waiver. Regarding the argument that any claim for emotional distress waives the privilege, the Second Circuit commented that "[i]n reality respondents simply seek to have the privilege breached whenever there is a possibility that the psychiatric records may be

10

useful in testing the plaintiff's credibility or may have some other probative value. To accept these contentions would inject the balancing component that *Jaffee* foreclosed . . ." *Id.* at 141. This Court concludes that the concerns of the Second Circuit are well founded and closely aligned with the D.C. Circuit's concerns that an overly broad doctrine of implicit waiver would effectively overrule *Jaffee*.

Courts in this district have also applied the approach endorsed in *Sims*, under which "garden variety" emotional distress allegations are not deemed to waive privilege. In *Barnett v. PA Consulting Group, Inc.*, a discrimination case similar to this one, the Court upheld a magistrate judge's ruling that the plaintiff "had not waived her psychotherapist-patient privilege by claiming emotional damages" that were less than severe. *Barnett*, 2007 WL 845886, at *3. The Court ruled that there was no controlling authority indicating "that [the plaintiff's] allegations of an ordinary reaction of anger, humiliation and anxiety at being fired" placed her mental state at issue and thus waived privilege. *Id.* at *4.

This Court agrees that a plaintiff's allegation of ordinary or "garden variety" emotional distress resulting from a defendant's alleged misconduct does not waive the psychotherapist-patient privilege. This conclusion gives effect to the D.C. Circuit's imperative that "we must supply a standard for determining whether a patient has waived the privilege . . . that does not eviscerate the privilege." *Koch*, 489 F.3d at 390. To hold otherwise would mean that privilege would be waived routinely in any case where a plaintiff sought recompense for the ordinary pain and suffering experienced in response to adverse employment actions that the plaintiff claims are illegal. *Cf. Benham v. Rice,* No. 03-cv-01127, ECF No. 115, at *3 (D.D.C. Sept. 14, 2007) (reaching the same conclusion in the context of ordering mental examinations pursuant to Fed. R.

11

Civ. P. 35). Such an outcome would have "an unwarranted chilling effect on persons who believe that they have been subjected to unlawful discrimination." *Id.*

Federal courts have developed several functional factors to analyze whether a plaintiff's claims for emotional distress are "garden variety" or more severe. The district court in *Turner v. Imperial Stores*, 161 F.R.D. 89 (S.D. Cal. 1995) identified five factors that indicate a plaintiff has put his or her mental state in controversy: "(1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) plaintiff's concession that his or her mental condition is 'in controversy.'" *Id.* at 95. While *Turner* applied these factors to assess whether a party's mental condition was "in controversy" for the purposes of ordering the party to submit to a mental evaluation pursuant to Rule 35, the Court finds these factors equally applicable for analyzing whether or not an emotional distress claim is "garden variety" in the waiver context as well.[6] Other courts in this district have applied similar factors in determining whether a plaintiff's claim for emotional distress goes beyond the "garden variety." *See*

---

[6] A few courts have suggested that distinguishing "garden variety" emotional distress allegations from more severe allegations may be useful in the Rule 35 context, but not in the context of determining waiver of privilege. *See, e.g.*, *McKinney v. Del. Cnty. Mem'l Hosp.*, No. 08-1054, 2009 WL 750181, at *5 (E.D. Pa. Mar. 20, 2009). This Court disagrees and joins those courts that have found the contexts to be analogous. *See Jackson v. Chubb Corp.*,193 F.R.D. 216, 225 n.8 (D.N.J. 2000). Under Rule 35, "[t]he court . . . may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). Rule 35 also imposes other requirements, such as the requirement that an order to submit to examination be made "on motion for good cause," Fed. R. Civ. P. 35(a)(2)(A), but the condition precedent to a Rule 35 order – that the party's mental condition be "in controversy" – raises essentially the same question as whether a party has sufficiently put his or her mental condition at issue to justify a finding that privilege has been waived. At a practical level, the Court notes that while a Rule 35 order to submit to a mental examination may generally be more burdensome to a party than an order to produce documents, the harm to a party's privacy interests occasioned by a broad finding of waiver of the psychotherapist-patient privilege may be significantly greater, depending on the situation. *See E.E.O.C. v. Serramonte*, 237 F.R.D. 220, 224 (N.D. Cal. 2006). ("This Court finds that if anything, delving into a plaintiff's medical or psychiatric records is even more invasive than conducting a medical or psychological examination, and that the standard for waiver should be at least as rigorous as that in *Turner*.") The Court also emphasizes the important distinction between the question of waiver, to which the *Turner* factors are germane, and the threshold question of relevance, which the Court has independently analyzed above.

*Benham,* No. 03-cv-01127, ECF No. 115, at *3-5 (in Rule 35 context). In addition, the D.C. Circuit also cited similar factors in defining "garden variety" emotional distress claims. *See Koch*, 489 F.3d at 390 (describing "middle ground" approach that does not recognize waiver of privilege "where a plaintiff merely alleges 'garden variety' emotional distress and neither alleges a separate tort for the distress, any specific psychiatric injury or disorder, or unusually severe distress").

In this case, there are no factors showing that the plaintiff has alleged more than "garden variety" emotional distress of the kind an ordinary person might experience following an episode of discrimination. The plaintiff has not alleged that a specific mental or psychiatric injury or disorder resulted from the defendant's actions. *See* Am. Compl. ¶¶ 44-45; *see also* Pl.'s Resp. to Interrog. No. 6 ("Plaintiff states that he has not consulted or obtained treatment from any health care provider for any injury resulting from Defendant's . . . conduct."). Nor has the plaintiff asserted a separate cause of action for emotional distress. *See* Am. Compl. ¶¶ 46-50. The plaintiff here has indicated that he will not offer expert testimony or rely on medical records as evidence of emotional distress. *See* Pl.'s Letter at 3. Nor does the Court find that the plaintiff alleged that his emotional distress is "unusually severe." In the Amended Complaint, the plaintiff alleged injuries including "humiliation, embarrassment, emotional distress, economic loss, and deprivation of his right to equal employment opportunity." Am. Compl. ¶ 44. In his Rule 26 initial disclosures, he described his injuries as including "severe embarrassment and humiliation, loss of self-esteem, loss of career satisfaction, and feelings of worthlessness and shame." Pl.'s Init. Disclosures at 2. Despite the plaintiff's use of the word "severe," the Court does not find that these statements describe emotional distress that is "unusually severe" or goes beyond the ordinary emotional distress that would be engendered in reaction to illegal

discrimination. Accordingly, the plaintiff here has alleged only "garden variety" emotional distress and has not waived the psychotherapist-patient privilege.

In arguing that the plaintiff has implicitly waived the privilege, the defendant relies chiefly on *Kalinoski v. Evans*, 377 F. Supp. 2d 136 (D.D.C. 2005) and *Roberson v. Bair*, 242 F.R.D. 130 (D.D.C. 2007). These cases are unavailing for two key reasons. First, they were decided before the D.C. Circuit's ruling in *Koch v. Cox*, which provided valuable guidance on these issues. Indeed, *Kalinoski* appears to have applied the "broad" approach to waiver of privilege in reliance on language from an Eighth Circuit opinion that was explicitly critiqued by the D.C. Circuit in *Koch*. *See Kalinoski* 377 F. Supp. 2d at 138 (citing *Schoffstall v. Henderson*, 223 F.3d 818, 822 (8th Cir. 2000)); *Koch*, 489 F.3d at 389 ("We need not decide whether making a claim for emotional distress necessarily waives the privilege . . . in order to observe that an affirmative answer does not follow from the *Schoffstall* court's analogy to the attorney-client privilege."). Second, in any event, the plaintiffs in *Kalinoski* and *Roberson* appear to have alleged more than "garden variety" emotional distress. In *Kalinoski*, the plaintiff alleged "that defendant's actions caused her severe emotional distress and led her to seek the services of a mental health professional." 377 F. Supp. 2d at 138. In *Roberson*, the plaintiff did not "contest that her mental condition [was] in controversy. She unquestionably claim[ed] that she [was] suffering from two identifiable forms of mental illness or disorder and that those conditions were caused by Defendant." 242 F.R.D. at 137. The *Roberson* plaintiff also intended to rely on expert testimony regarding her mental conditions. *Id.*

Accordingly, the plaintiff here has not waived the psychotherapist-patient privilege and may assert the privilege where appropriate.

    **C.**    **Privilege Log**

Given the Court's conclusion that the plaintiff may invoke the psychotherapist-patient

privilege, the defendant contends that the plaintiff must still produce a privilege log specifying any otherwise responsive documents over which the plaintiff is asserting the psychotherapist-patient privilege. Rule 26(b)(5)(A) states that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged . . ., the party must (i) expressly make the claim [and] (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). While the Court could require the plaintiff to produce a document-by-document privilege log in appropriate circumstances, such a log is unnecessary to satisfy Rule 26(b)(5)(A) for documents subject to psychotherapist-patient privilege in this case. *See In re Imperial Corp. of America,* 174 F.R.D. 475, 477-79 (S.D. Cal. 1997) (ordering categorical privilege log instead of document-by-document log). The Court finds that the plaintiff may assert the psychotherapist-patient privilege in satisfaction of Rule 26(b)(5) by producing a categorical privilege log here. That privilege log should specify the following information with respect to each mental health professional whose communications with the plaintiff have resulted in documents that are withheld for privilege:

1. The name, address, and relevant qualifications of the mental health professional;
2. The approximate time period of the privileged communications;
3. The general nature of the communications (e.g., "marriage counseling records");

As discussed above, the Relevant Time Period for which the plaintiff should provide responsive medical records, including mental health records, is from two years prior to the alleged discrimination through the present.

### D. Sealed Submissions

As mentioned above, in a Minute Order, dated February 28, 2011, the Court granted the parties' joint motion to, *inter alia*, file their submissions under seal by March 2, 2011 at a length

15

of five pages. While the Court has discretion to seal filings where appropriate, "the general presumption [is] that court documents are to be available to the public." *In re Pepco Employment Litig.*, No. 86-0603, 1992 WL 115611, at *5-7 (D.D.C. May, 8 1992); *see also Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991) (noting the "strong presumption in favor of public access to judicial proceedings" and the factors to be weighed in deciding to seal documents). In light of the limited amount of sensitive material contained in the parties' letters, the Court now directs the parties to redact any sensitive information from the letters and refile copies of the letters with the Court for filing on the public record. The parties shall meet and confer to agree upon the necessary redactions, if any, and shall jointly refile copies of their letters within ten days of this opinion and the accompanying order.

**IV.     CONCLUSION**

For the reasons stated above, the Court grants in part and denies in part the motion to compel. The plaintiff must provide medical record documents for the period from two years prior to the alleged discrimination through the present that are responsive to the defendant's requests and that have a logical connection to the plaintiff's claims of injury. Records with a connection to the plaintiff's injuries include non-privileged mental or emotional health records, records involving new medical issues for which the plaintiff first sought treatment during the Relevant Time Period, and records involving a medical condition that the defendant has established, through other discovery, may have caused the plaintiff emotional distress. The plaintiff has not waived the psychotherapist-patient privilege and may assert the privilege where applicable in the manner described by the Court. Finally, the parties must refile redacted copies of their sealed letters within ten days for public filing on the record.

16

DATE: March 31, 2011

                                                /s/ *Beryl A. Howell*
                                            BERYL A. HOWELL
                                            United States District Judge